UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | 18 CR 158 |
| v. | ) | |
| | ) | The Honorable Charles R. Norgle, Sr. |
| ANTHONY MORGAN | ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

Between February 2015 and May 2016, defendant Anthony Morgan engaged in a series of illegal acts that resulted in a tragic crime spree in Chicago. On at least four separate occasions during that period, Defendant requested and paid for at least seven guns that an acquaintance purchased in New Mexico. Defendant then received those weapons, which were shipped through the mail, at his residence in Illinois. For those acts, defendant stands before this Court guilty of conspiring, while not being a licensed importer, manufacturer, dealer, or collector of firearms, to receive in Illinois firearms that had been purchased or otherwise obtained outside of Illinois, in violation of Title 18, United States Code, Section 922(a)(3) and Title 18, United States Code, Section 371.

But that charge does not capture the full extent, and horror, of the defendant's crime. He was not a sportsman or a collector of firearms merely taking a shortcut in obtaining firearms. Instead, he was the source of weapons for his gang on the South Side of Chicago. As he stated in his own words, "We a gang. We were gangbanging. I provided guns for the neighborhood because [I had] the connect." Those guns left a trail of carnage in this community: three are tied in shootings in Chicago, two were

used in homicides, and one was used in the targeted murder of 9-year old Tyshawn Lee – a murder for which Defendant's brother is currently awaiting trial in the Circuit Court of Cook County.

It is the Government's position that this is a case where the charged offense does not adequately capture the seriousness of the defendant's actions. As a result, the Government requests that the Court sentence the Defendant to the statutory maximum term of imprisonment of 60 months, which is appropriate, but not greater than necessary, to achieve the goals of sentencing.

I.  **PRELIMINARY ADVISORY SENTENCING GUIDELINES RANGE**

As a matter of process, the District Court must properly calculate the Guidelines range, treat the Guidelines as advisory, consider the Section 3553(a) factors, and adequately explain the chosen sentence, including an explanation for any variance from the Guidelines range. *Gall v. United States*, 128 S. Ct. 586, 596-97 (2007).

The government agrees with the Probation Office regarding the base offense level of 12, pursuant to Guidelines Section 2K2.1(a)(7), because the Defendant was not a prohibited person and the firearms he obtained are not known to have possessed high capacity magazines. PSR at ¶ 30.

The government agrees that the Defendant receives a two-level enhancement because his offense and relevant conduct involved more than 7 firearms[1], pursuant to Guidelines Section 2K2.1(b)(5). PSR at ¶ 31.

---

[1] As detailed in the plea agreement (R. 28), in addition to the seven guns the Defendant obtained as part of the conspiracy, he obtained at least one other gun from Individual A in approximately November 2011.

2

The government agrees with Probation that, pursuant to Guidelines Section 2K2.1(b)(5), the Defendant receives a four-level enhancement for trafficking of firearms. PSR at ¶ 32.

The government also agrees that the Defendant has timely demonstrated acceptance of responsibility for his actions and that a three-level decrease is warranted. PSR at ¶¶ 38-39.

The government agrees with the Probation Office that Defendant has zero criminal history points, which places him in Category I. PSR at ¶¶ 45-47.

Pursuant to these calculations, the Defendant's total offense level is 17, his criminal history category is I, and his advisory Guidelines range of imprisonment is 24-30 months' imprisonment. PSR at ¶ 80. The government also agrees that the Court may impose a period of supervised release of 1 to 3 years. PSR at ¶ 83.

## II. GOVERNMENT'S POSITION ON SENTENCING

The Sentencing Guidelines provide a starting point and initial benchmark for sentencing. *Gall v. United States*, 552 U.S. 38, 49-50 (2007). The "Guidelines remain an essential tool in creating a fair and uniform sentencing regime across the country." *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005); *see also United States v. Pulley*, 601 F.3d 660, 668 (7th Cir. 2010) (a "district court that sentences within the Guidelines necessarily gives weight and consideration to avoiding unwarranted disparities."). Although a sentence within the Guidelines is presumptively reasonable, *United States v. Cano-Rodriguez*, 552 F.3d 637, 639 (7th Cir. 2009), the

court must consider the factors set forth in 18 U.S.C. § 3553(a) in determining an appropriate sentence.

The Government respectfully submits that the statutory maximum sentence of 60 months, which is above the Guidelines range, is appropriate in this case.

### A. The Nature and Circumstances of Defendant's Crimes

As described above, between February 2015 and May 2016, the Defendant consistently requested firearms from Individual A, an acquaintance who lived in New Mexico. Each time, the Defendant sent Individual A money to purchase the firearms and then spoke to Individual A while he shopped for the firearms in New Mexico. After Individual A purchased the firearms, he shipped them from New Mexico to the Defendant at his residence in Illinois. The Defendant did this on at least four separate occasions in February 2015, August 2015, September 2015, and May 2016 and obtained at least seven guns over that period. PSR at ¶¶ 14-16. In his post-arrest statement, the Defendant admitted the reason he obtained these firearms. He stated that he obtained these guns for his gang that operated in his neighborhood on the South Side of Chicago. PSR at ¶ 17. That gang included the Defendant's two brothers, Tracey Morgan and Corey Morgan. *Id.* In the Defendant's own words, "We a gang. We were gangbanging. I provided guns for the neighborhood because [I had] the connect … I'm the non-felon and I know him."

Those were not just hollow words or empty boasts. Those guns, purchased in New Mexico at the direction of the Defendant, brought tragedy to the streets of Chicago. The first gun the Defendant received, which was purchased on February 6,

4

2015, was recovered by the Chicago Police Department on May 26, 2016 on the South Side of Chicago. The CPD Firearms Laboratory received a match between that gun and the gun that was used in a shooting on April 19, 2015, which occurred less than a mile from the Defendant's home. Two victims, a man and a woman, were shot in the neck, and a third man was grazed in the shoulder. PSR at ¶ 18. The second gun, also purchased on February 6, 2015, was recovered by the Chicago Police Department on the North Side of Chicago on January 8, 2016, at the scene of a homicide. PSR at ¶ 19. CPD Firearms Laboratory testing indicated that this gun was the homicide weapon in that shooting. Defendant obtained the third and fourth guns in August 2015. PSR at ¶ 14. CPD recovered the third gun from Defendant's vehicle in July 4, 2017 after CPD responded to a call of shots fired. PSR at ¶ 19. Law enforcement has not recovered the fourth gun.

The fifth and sixth guns were purchased in New Mexico on September 24, 2015. PSR at ¶ 14. CPD recovered the fifth gun in April 2017, approximately one mile from the Defendant's former residence on the South Side of Chicago. The CPD Firearms Laboratory received a match indicating that this gun was used in the November 2, 2015 targeted murder of 9-year old Tyshawn Lee. PSR at ¶ 20. The background regarding Tyshawn Lee's murder is relevant to the Defendant and to the firearms that the Defendant received in September 2015. Tyshawn Lee's father is believed to be a member of a gang that is rivals with the Defendant's gang, and was suspected of being responsible for the October 13, 2015 murder of Defendant's brother, Tracey Morgan. PSR at ¶ 21. The Defendant's mother was in the car with Tracey Morgan at

the time of his murder, and she was also shot, but she survived. *Id*. Less than three weeks after the murder of Tracey Morgan, Tyshawn Lee was murdered. Defendant's other brother, Corey Morgan, is one of three defendants scheduled to begin trial next month in the Circuit Court of Cook County for Tyshawn Lee's murder. PSR at ¶ 22. When Corey Morgan was arrested by CPD for that murder on November 16, 2015, he was in possession of the sixth gun that the Defendant received. PSR at ¶ 23.

The seventh gun that the Defendant received as part of the conspiracy was purchased in New Mexico in May 2016. PSR at ¶ 15. Notably, this occurred *after* the murder of his brother, *after* the murder of Tyshawn Lee, and *after* Corey Morgan's arrest while in possession of a different gun the Defendant had received. The Midlothian Police Department later recovered this gun in July 2016 – just two months after the Defendant received it in Illinois. PSR at ¶ 24.

In total, the Defendant's crime, conspiring to illegally receive firearms in Illinois, resulted in his receiving at least seven guns over a 16-month period. The Defendant then parceled out those guns to various people, who used them to wreak havoc and bring tragedy to this city. The nature and circumstances of Defendant's crime warrants an above-Guidelines sentence of 60 months.

**B.  Defendant's History and Characteristics**

Defendant's crime is even more frustrating because, unlike so many defendants in this District, he did not have a criminal history, he was employed, and he had, in his own words, a "fair" upbringing. PSR at ¶¶ 45, 54, and 73. The Defendant has suffered great tragedy in recent years. His brother was murdered and

6

in the same shooting, his mother was shot. That is an unimaginable trauma for a son and brother to undergo, but it bears emphasizing that the Defendant's crime began months before that event. His offense is not the result of a traumatic event or a momentary lapse in judgment. Instead, it was a well-planned scheme that involved repeated acts over a 16-month period.

That the Defendant did not have a criminal record is an indication that he put thought into his offense. The Defendant was not a prohibited person. He could have obtained a valid FOID card in Illinois and purchased these guns himself. That surely would have been more convenient than wiring money to an acquaintance in New Mexico, speaking to that person on the phone as he shopped for firearms, and then waiting to receive the guns days later in the mail. But if he had purchased the guns himself, they would have been tied directly to him. Every time a weapon was used in a crime, it could have pointed to the Defendant. So instead, to obtain guns for his gang, he went through an intermediary. The Defendant knew the system, and he knowingly thwarted it to arm criminals.

In this case, the fact that the Defendant did not have a criminal history is an aggravating factor. Indeed, it is part of the reason the Defendant committed the crime, as he said himself in his post-arrest statement, he provided the guns because he was a non-felon and he had the out-of-state connection. As such, the Defendant's history and characteristics also support an above-Guidelines term of imprisonment.

### C. The Need to Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment, and Afford Adequate Deterrence

As stated above, this is a case where the charged offense does not reflect the seriousness of the Defendant's actions. This is a case study in how illegal guns flood this District and terrorize our community. The Defendant obtained guns through a straw buyer, distributed those guns amongst his brothers and friends, and then those guns were used in multiple shootings and crimes. This was done willfully. As exhibited by the time to recovery for many of the guns, they were out of the Defendant's hands shortly after he received them. That is an aggravating factor. Once the guns left the Defendant's possession, they did not trace directly back to him. Each gun was another anonymous weapon passed from criminal to criminal to further violent conduct. Unfortunately, at least one of the guns the Defendant received is still at large. It is, therefore, possible that the Defendant's actions will still be felt by our community for years to come.

The effect of illegal gun violence in Chicago – which is perpetuated by the proliferation of illegal guns – warrants an above-Guidelines sentence for the Defendant. The Seventh Circuit has recently upheld an above-Guidelines sentence for a violation of 18 U.S.C. §922(a)(3) in a case where the sentencing Judge based the above-Guidelines sentence on the fact that the Sentencing Guidelines did not "adequately reflect the seriousness of this particular type of offense as it relates to this geographic area [Chicago]." *United States v. Hatch*, 909 F.3d 872 (7th Cir. 2018) (finding that the sentencing judge "may depart from the Guidelines based on locality-specific factors"). That analysis applies equally here.

Further, Defendant's offense is not a victimless crime. His victims are both the community at large, and each of the individuals, and their families, shot by one of the weapons the defendant received. The harder it is to trace firearms, the more likely it is that they end up in the hands of criminals. The Defendant knew that when he committed this offense and he bears responsibility for what happened with the firearms after they came into his possession.

This case cries out for a sentence that will send a message to others that illegally obtaining firearms is a serious crime that will not be treated with a slap on the wrist. Illegal firearms are the lifeblood of violent crime in this city, and they need to be treated as such. In addition, specific deterrence is warranted for the Defendant. The fact that he continued to illegally receive guns after the death of one brother and the arrest of his other brother indicates that he was not deterred by the serious consequences of gun crimes and gun violence.

A sentence of 60 months' imprisonment will reflect the grave consequences of the Defendant's crime, would help ensure that the Defendant does not continue his criminal conduct when he is released, and will send a message to others that there will be serious consequences for engaging in similar behavior.

### III. GOVERNMENT'S POSITION ON SUPERVISED RELEASE

The government has no objections to the conditions of supervised release recommended by the Probation Office, and the government agrees that a period of supervised release of three years is appropriate. The government also agrees with

the special conditions and discretionary conditions of supervised release, as recommended by the Probation Office.

IV. CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court sentence Defendant Anthony Morgan to the statutory maximum term of imprisonment of 60 months of incarceration, with three years of supervised release.

Date: August 20, 2019

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By: /s *James P. Durkin*
JAMES P. DURKIN
Assistant United States Attorney
United States Attorney's Office
219 South Dearborn Street, Fifth Floor
Chicago, Illinois 60604
(312) 353-6630