UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>    *Plaintiff,* )<br>                          )<br>v.                                  )<br>                                   )<br>ANTHONY MORGAN, )<br>    *Defendant.* ) | Case No. 18 CR 158<br><br>Honorable Charles Norgle,<br>*Judge Presiding* |

**DEFENDANT'S SENTENCING MEMORANDUM**

The defendant, Anthony Morgan, by counsel, Susan Pavlow, pursuant to Rule 32 of the Federal Rules of Criminal Procedure, 18 U.S.C. §3553, and the United States Supreme Court opinions in *United States v. Booker*, 543 U.S. 220 (2005), and *Gall v. United States*, 552 U.S. 38 (2007), respectfully submits the following objections to the presentence investigation report (PSI) and sentencing memorandum.

**I.    Introduction**

Mr. Morgan respectfully requests the Court to impose a below guideline sentence. Mr. Morgan has no prior convictions and a stable work history. Combined with his personal history and characteristics, such a sentence would provide just punishment and adequate deterrence, promote respect for the law and reflect the seriousness of the offense.

## II. Objections to the Presentence Investigation Report

### A. Statutory Provisions, ¶79

While the PSI correctly sets forth the sentencing options regarding custody, it neglects to mention that Mr. Morgan is eligible for probation as this is a class D offense. 18 U.S.C. §3559(a)(4); 18 U.S.C. §3561.

### B. Other Criminal Conduct, ¶47

The PSI references expungement of Mr. Morgan's prior arrests. With the exception of one prior term of supervision, none of these arrests resulted in convictions. Since even expunged sentences are not to be considered in a defendant's criminal history, Mr. Morgan respectfully requests that any reference to expunged arrests be stricken from the PSI. §4A1.2(j).

## III. Objections to the Proposed Conditions of Supervised Release

### A. Discretionary Condition Six (6):
This condition prohibits the defendant from meeting or communicating with any other person whom the defendant knows to be engaged, or planning to be engaged, in criminal activity. Such conduct is synonymous with participation or accountability of criminal conduct and is sufficiently covered by the mandatory condition prohibiting a defendant from committing another crime. Mand. Cond. (1). As such, this condition is redundant.

### B. Discretionary Condition Twenty-Three (23):
The defendant objects as there is insufficient evidence to warrant this condition. This case does not involve computer fraud or a search warrant. Discretionary condition sixteen (16) already allows the probation office to visit the defendant at home, work, school,

2

or other location and confiscate any contraband. There is nothing in the offense or pretrial release conduct to support the imposition of this condition.

### IV.  A below guideline sentence is sufficient but not greater than necessary to satisfy the requirements of §3553(a).

"It has been a uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Pepper v. United States*, 131 S. Ct. 1229, 1240 (2011) (*quoting Koon v. United States*, 518 U.S. 81, 113 (1996). Sentencing courts should use their discretion to impose a punishment that "'fit[s] the offender and not merely the crime.'" *Id.* (quoting *Williams* v. *New York*, 337 U.S. 241, 247 (1949). While a judge must consider all the §3553(a) factors, he is "not prohibited from including in that consideration the judge's own sense of what is a fair and just sentence under all the circumstances." *U.S. v. Jones* 460 F.3d 191 (2nd Cir. 2006).

#### A.  Personal History and Characteristics of Anthony Morgan

Anthony was one of three boys born to parents who struggled to support their family. His father was a drug addict who abused crack cocaine and heroin. The children frequently saw him get high and use drugs, and he would stash drugs at the family home in order to feed his habit. His father is currently in a nursing home facility after being diagnosed with dementia. He also suffers from several physical issues from his years of drug abuse, and recently had his leg amputated. Anthony is able to speak with his father, although his father's communication skills

3

vary by day. Anthony is extremely close with his mother. She supported the family emotionally, often acting as both mother and father, and financially. She worked her entire life at the United States Post Office, and because she was often at work, the boys were frequently on their own.

Anthony grew up in the Auburn Gresham neighborhood, which is known for a high crime rate, gangs, drugs, and violence. Neighborhoods matter for children's long-term outcomes. Raj Chetty & Nathaniel Hendren, *The Impacts of Neighborhoods on Intergenerational Mobility: Childhood exposure Effects and County-Level Estimates*, 4 (May 2015). It has been recognized that "sustained exposure to disadvantaged neighborhoods has a much greater negative impact on the chances a child will graduate from high school." G. T. Wodtke, D. J. Harding, F. Elwert. *Neighborhood Effects in Temporal Perspective: The Impact of Long-Term Exposure to Concentrated Disadvantage on High School Graduation.* American Sociological Review, 2011; 76 (5). Auburn Gresham is considered one of the toughest neighborhoods in the city. There is little economic development and poverty is rampant. From a young age, Anthony recalled seeing people carry guns and getting shot just walking to the store. The regularity of people possessing guns was part of the community in which Anthony was raised. Indeed, a recent survey of young men in Chicago neighborhoods, including Auburn Gresham, found that one in three men have carried a gun illegally. "Perspectives on Guns and Gun Violence from young Adults Living in Chicago's West and South Sides" by Jocelyn Fontaine, Nancy LaVigne, David Leitson, Nkechi Erondu, Cameron Okeke, and Anoamika

4

Dwivedi, Urban Institute, October 2018. Of those, 93% did so for self-protection and 84% to protect friends and family members. *Id*. Only 6% reported possessing firearms to commit crimes. *Id*.

It is against this backdrop of life history that the nature of the offense must be viewed. In the nearly eighteen months since his arrest, Mr. Morgan has had a chance to think critically about his conduct and the dangers associated with illegally obtaining firearms and allowing others access to firearms. While Anthony never meant to harm anyone, it deeply troubles him to know that his conduct may have caused anguish to other families affected by firearm-related crimes, particularly in light of his family's tragedy.

In October, 2015, his brother Tracey was murdered while riding in a vehicle with their mother, who was also shot twice. Their mother and Tracey had just come from a violence reduction strategy meeting at the local police station when multiple shots were fired into the car. Fortunately, his mother survived, but Tracey's death was devastating for their family.

His brother Corey is currently awaiting trial on charges of murder in the Circuit Court of Cook County. The alleged murder weapon, which was purchased by Anthony in 2015, was among several firearms recovered by Chicago Police officers in 2017 when individuals fled from an area where a music video was being made. Anthony did not participate in the conduct alleged against his brother. Prior to his arrest in this case, Anthony engaged in a conversation with the purchaser of the guns who, unbeknownst to Anthony, was recording the meeting. Anthony

5

unequivocally stated that he had "nothing to do with that situation" and that his brother was innocent of the murder charges. ATF _001-000367. Anthony was arrested by agents upon returning home from a visit to his sons in Arkansas. He provided a thorough and detailed video statement in which he admitted obtaining the firearms and agents lauded his candor.

    As the numerous character letters attest, Anthony is a positive, respectful, and mild-mannered person who is always willing to help others[1]. After finishing high school, his mother enrolled him in Philander Smith College in Little Rock, Arkansas. Dropping him off at college was a moment of pride for both Anthony and his mother. College was a very different world from his childhood. At school, he joined a fraternity. In addition, he became a member of the campus Panhellenic committee, served as a mentor for Big Brother & Big Sister, and was a college ambassador. He has worked on fund raising projects both in Arkansas and Illinois. Letters of Ryan Holmes and Brandon Applewhite. Although he struggled academically and did not finish college, he is grateful for the experience and the life-long friendships.

    Anthony was employed at the United States Post Office for several years. He worked shift work, often rising at 3:00 a.m. to go to work as a service distribution clerk where he worked the window and gathered mail. He was a dependable employee and enjoyed the stability the job provided. He was terminated after his

---

[1] Characters letters will be submitted under separate cover.

arrest in this case. He filed a grievance in order to return to work but to date, he has not been able to do so.

Anthony's two sons, aged 11 and 9, reside in a small town in Arkansas. His daughters reside in Chicago. He loves his children and believes his most important job in life to guide them as they grow.

As his mother writes, he is a wonderful son who helps to care for his parents. Since his arrest, he has reached out to old school friends, who stand ready to help him rebuild his life as evidenced by the numerous character letters submitted on his behalf. Anthony hopes to obtain a CDL license and return to gainful employment. He not only wants to continue to care for his children, but he is all his mother has left, and he is committed to supporting both his parents.

### B. Criminal History

Mr. Morgan is a criminal history category I, with no prior convictions.

### C. Unwarranted sentencing disparities

Section 3553(a) does not allow unwarranted sentencing disparities. *United States v. Statham*, 581 F.3d 548, 556 (7th Cir. 2009); *United States v. Bartlett*, 567 F.3d 901, 908-909 (7th Cir. 2009). Mr. Morgan plead guilty to Count One, which charged him with a violation of 18 U.S.C. §371 by obtaining firearms outside the state while not being a licensed firearm dealer in violation of 18 U.S.C. §922(a)(3). In *United States v. Norris*, the defendant was convicted, following a jury trial, of five counts of falsifying his address on gun purchase forms and 14 counts related to receiving a firearm while under indictment. *United States v. Norris*, 39 Fed.Appx.

361 (N.D. Ind. 2002); 3:00-CR-00083 (Sharp, J.). The offenses involved the purchase of 53 guns in 28 separate transactions. That quantity of firearms had the potential to inflict much harm, yet the defendant was sentenced to 37 months imprisonment. In comparison, Mr. Morgan was involved in 8 guns. Aside from the fact that Mr. Morgan did not proceed to trial nor attempt to obtain weapons while under indictment, a proportional sentence would result in 5 months imprisonment. *See also*, *United States v. Howell*, 37 F.3d 1197 (7th Cir. 1994) (Defendant sentenced to probation and home detention following jury verdict of guilty for acting as a straw purchaser for guns for her husband, a convicted felon); *Abramski v. United States*, 573 U.S. 169 (2014) (the defendant was convicted of making a false statement on a firearm purchase form by denying he was a straw purchaser in violation of 18 U.S.C. §922(a)(6), and was sentenced to five (5) years of probation).

    **D.**    **Protection of the Public**

Anthony is not a danger to the public. He has never served a term of imprisonment and he has zero criminal history points. He has no pretrial violations and has served a period of approximately eighteen (18) months of home incarceration while on pretrial release with no violations.

    **E.**    **Deterrence**

"Current empirical research on general deterrence shows that while certainty of punishment has a deterrent effect, increases in severity of punishments do not yield significant (if any) marginal deterrent effects." *Deconstructing the Career Offender Guideline*, Amy Baron Evans, Jennifer Coffin, Sara Noonan, April 2011, p.

8

36, www.fd.org, citing Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime and Justice: A Review of Research 28-29 (2006) (internal quotations omitted). In other words, the chance of being caught is a vastly more effective deterrent than the actual punishment. (*See* U.S. Department of Justice, National Institute of Justice, *Five Things About Deterrence*, (May 2016.) While prison sentences are good for punishment and incapacitation, they are unlikely to deter future crime. *Id.* "Since 2000, the effect of increasing incarceration on the crime rate has been essentially zero." *What Caused the Crime Decline?,* Dr. Oliver Roeder, Lauren-Brooke Eisen, and Julia Bowling, Brennan Center for Justice, Feb. 12, 2015. Further, "empirical studies have shown that longer sentences have minimal or no benefit on whether offenders or potential offenders commit crimes." Brennan Center for Justice, *What Caused the Crime Decline?* (Feb. 2015).

In addition, custodial sentences are costly. The annual cost of incarceration is approximately $36,300, whereas the annual cost of probation is $4,369.00. PSI, ¶89; *United States v. Bernier*, 758 F.Supp. 195 (S.D.N.Y. 1991) (sentencing court downward departed for factors including the fact that a guideline sentence would "cost the taxpayers in the neighborhood of $680,000").

As to specific deterrence, Anthony is 32 years old with no criminal convictions. This fact places him in the category of those least likely to commit further crimes. "*A Comparison of the Federal Sentencing Guidelines Criminal History Category and the U.S. Parole Commission Salient Factors Score*," p. 14-15 (January 4, 2005) (suggesting that Criminal History Category I does not adequately

9

take into account the lack of recidivism for first time offenders). Miles D. Harar, *Do Guidelines Sentences for Low-Risk Drug Traffickers Achieve Their Stated Purpose?*, 7 Fed.Sent.Rep. 22 (1994) (a guidelines sentence has no deterrent value and can actually increase recidivism). As set forth below, the consequences of Anthony's actions will be felt in all areas of his life. He realizes the gravity of the offense and has no desire to repeat the poor choices that resulted in his present circumstances.

### F. Just Punishment

It is axiomatic that "just punishment" under 18 U.S.C. §3553(a) encompasses not just imprisonment, but also other punishment sustained by a defendant. A federal felony conviction, and all the collateral consequences that accompany that label, provides specific deterrence and just punishment to Mr. Morgan. Most significantly, his arrest cost him a long-standing and stable job with the post office and will undoubtedly affect his future employment opportunities. The low-end of the guideline range is 24 months. Mr. Morgan has served approximately 18 months on home incarceration without incident. He has no criminal history convictions and was forthright about his actions.

## V. Conclusion

Anthony Morgan recognizes that each and every one of the consequences resulting from his actions is entirely his fault. In light of the nature and characteristics of his life, his lack of criminal history, and strong support from his mother and his friends, it is respectfully requested the Court impose a below

guideline sentence. Such a sentence is sufficient but not greater than necessary to satisfy the requirements of §3553(a).

Respectfully submitted,

/s/ *Susan M. Pavlow*  
Attorney for defendant

SUSAN M. PAVLOW  
Attorney for Defendant  
53 West Jackson Boulevard, Suite 1215  
Chicago, Illinois 60604  
312-322-0094  
Facsimile 312-362-9907

## **CERTIFICATE OF SERVICE**

I hereby certify that Defendant Anthony Morgan's Sentencing Memorandum was served on the 21st day of August, 2019, in accordance with Fed.R.Crim.P.49, Fed.R.Civ.P.5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

/s/ *Susan M. Pavlow*  
Susan M. Pavlow

11